SIXTH DIVISION

January 19, 2001

No. 1-99-2298 

ADRIENNE GATHINGS,   Adm'r of the Estate of Artrail Harvey, Deceased, and ADRIENNE GATHINGS, Ind., 

Plaintiffs-Appellants, 

v. 

JEAN-WILSON MUSCADIN, and MADHUPA SUD, 

Defendants-Appellees. 

))))))))))))

Appeal from the

Circuit Court of

Cook County.

Honorable 

Robert B. Berland,

Judge Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Adrienne Gathings, individually and as administrator for the decedent, Artrail Harvey, appeals the circuit court's order granting a directed verdict for defendant, Doctor Jean-Wilson Muscadin, on plaintiff's wrongful death action.  On appeal, plaintiff argues that the circuit court erred in finding that defendant owed no duty to the decedent.  We affirm.

The undisputed facts show that on June 26, 1993, plaintiff brought her 20-month-old son, Artrail, to Roseland Community Hospital to treat Artrail's fever, overall weakness, and repeated vomiting.  Artrail was admitted to the hospital under the care of Doctor Sales, a general surgeon.

On the evening of June 28, Doctor Sales decided to obtain a consultation with a pediatrician because he was uncertain as to the cause of Artrail's persistent vomiting.  At approximately 11:30 p.m., Doctor Sales told the nursing staff to contact defendant to request a consultation.  Defendant was a member of Roseland Community Hospital's professional staff.

A nurse subsequently paged defendant and asked him to consult on Artrail's case.  Defendant, who was in Rockford, Illinois, for a meeting of a charitable organization, told the nurse that he was not "on call" and was unavailable to accept the consultation.

The following morning, Artrail suffered a cardiorespiratory arrest and died.  An autopsy revealed that Artrail had died from complications from an undiagnosed bowel obstruction.

Plaintiff filed a wrongful death action based on medical malpractice, alleging that Artrail was not properly diagnosed and treated in a timely manner as a result of defendant's failure to come to the hospital in response to Doctor Sales' request for a consultation.  A jury trial was held on plaintiff's second amended complaint.  At the close of plaintiff's case, the court directed a verdict for defendant, finding that he owed no duty to Artrail.  Plaintiff filed this timely appeal.

Defendant filed a motion to dismiss the appeal, arguing that plaintiff failed to provide an adequate record for the appellate court.  The motion to dismiss is denied, as the record on appeal is sufficient for a determination of the propriety of the circuit court's order.

The appellate court reviews 
de
 
novo
 the circuit court's order granting a directed verdict to defendant.  
Susnis v. Radfar
, No. 1-99-0519, slip op. at 13-14 (November 3, 2000).  The circuit court should grant a directed verdict only if all the evidence, viewed in the light most favorable to the non-moving party, so overwhelmingly favors the movant that no contrary verdict could stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 510 (1967).  

In a negligence action for medical malpractice, plaintiff must prove a duty owed by defendant, a breach of duty, an injury proximately caused by the breach, and resultant damages.  
Reynolds v. Decatur Memorial Hospital
, 277 Ill. App. 3d 80, 85 (1996).  A physician's duty is limited to those situations in which a direct physician-patient relationship exists or there is a special relationship such as when an infant sues for prenatal injuries foreseeably caused by the physician's negligent care of the mother prior to conception.  
Reynolds
, 277 Ill. App. 3d at 85.  The determination of whether a duty exists is a matter of law to be determined by the court.  
Tsoukas v. Lapid
, 315 Ill. App. 3d 372, 386 (2000).

In the present case, the undisputed facts show that defendant declined the consultation because he was out of town and not "on call."  In his conversation with the nurse, defendant did not take any information about Artrail, nor did he review Artrail's records, recommend any treatment, or accept Artrail as a patient.  Thus, the circuit court correctly found that defendant owed no duty to Artrail, as no physician-patient or other special relationship existed between them.

This case is similar to 
Reynolds
.  In 
Reynolds
, a pediatrician examined a child who had become limp after falling off a couch.  
Reynolds
, 277 Ill. App. 3d at 82.  The pediatrician telephoned a colleague, Doctor Fulbright, at his home and they discussed the child's symptoms. 
Reynolds
, 277 Ill. App. 3d at 82.  Doctor Fulbright suggested that the pediatrician perform a spinal tap to determine whether meningitis or encephalitis was involved. 
Reynolds
, 277 Ill. App. 3d at 82.   The pediatrician performed the spinal tap, which apparently did not indicate the presence of either meningitis or encephalitis.  
Reynolds
, 277 Ill. App. 3d at 83.  When the child was transferred to another hospital, doctors there discovered that he had a spinal cord injury.  
Reynolds
, 277 Ill. App. 3d at 83.  The child later became quadriplegic.  
Reynolds
, 277 Ill. App. 3d at 81.

Plaintiffs filed a medical malpractice action, alleging that the child's quadriplegia resulted from Doctor Fulbright's failure to properly diagnose him.  
Reynolds
, 277 Ill. App. 3d at 81.  The trial court granted summary judgment for Doctor Fulbright.  
Reynolds
, 277 Ill. App. 3d at 81.  The appellate court affirmed:

"A consensual relationship can exist where other persons contact the physician on behalf of the patient, but this is not a case in which Fulbright was asked to provide a service for [the child], conduct laboratory tests, or review test results.  Fulbright did nothing more than answer an inquiry from a colleague.  He was not contacted again and he charged no fee.  A doctor who gives an informal opinion at the request of a treating physician does not owe a duty of care to the patient whose case was discussed."  
Reynolds
, 277 Ill. App. 3d at 85.

Similarly, in the present case, defendant did not provide a service for Artrail, conduct laboratory tests, or review test results.  After his initial inquiry from the nurse, he was not contacted again and he charged no fee.  Like Fulbright, defendant owed no duty to the patient.  In fact, defendant's argument that he owed no duty is stronger than Fulbright's, as defendant never even gave an informal opinion, but rather told the nurse that he was not "on call" and declined the consultation.   Plaintiff cites 
Bovara v. St. Francis Hospital
, 298 Ill. App. 3d 1025 (1998); however, 
Bovara
 does not compel a different result.  In 
Bovara
, plaintiff's decedent met with Doctor Luke Pascale, a cardiologist, about his heart disease.  
Bovara
, 298 Ill. App. 3d at 1027.  At Doctor Pascale's request, two colleagues, Doctor Edgett and Doctor Bliley, reviewed the decedent's angiogram.  
Bovara
, 298 Ill. App. 3d at 1027.  Doctors Edgett and Bliley opined that the decedent was a candidate for angioplasty.  
Bovara
, 298 Ill. App. 3d at 1028.  Doctor Pascale later met with Doctors Edgett and Bliley, where they discussed the decedent's history and the decision was made to perform angioplasty.  
Bovara
, 298 Ill. App. 3d at 1032.

The decedent died during the angioplasty procedure.  
Bovara
, 298 Ill. App. 3d at 1026.  The decedent's estate sued Doctors Edgett and Bliley (defendants), alleging that they committed medical malpractice by opining that decedent was a candidate for angioplasty.  The trial court granted summary judgment for defendants.   
Bovara
, 298 Ill. App. 3d at 1026.   On appeal, defendants argued that, like 
Reynolds
, they owed no duty to the decedent because they merely gave an informal opinion at the request of the treating physician.  
Bovara
, 298 Ill. App. 3d at 1030. The appellate court disagreed, stating:

"The facts of 
Reynolds
 are distinguishable.  While the consulting physician in 
Reynolds
 just suggested a test and was not responsible for any portion of the patient's diagnosis or treatment, [defendants] reviewed test results and interpreted them."  
Bovara
, 298 Ill. App. 3d at 1030.

The 
Bovara
 court also noted that after reviewing the angiogram, defendants followed up by meeting with Doctor Pascale.  At that meeting, they discussed Bovara's history, after which the decision was made to recommend angioplasty. 
Bovara
, 298 Ill. App. 3d at 1032.  In addition, Doctor Pascale recorded on the decedent's hospital chart that "catheterization reviewed by [defendants]."  
Bovara
, 298 Ill. App. 3d at 1032.  The 
Bovara
 court determined from said evidence that a genuine issue of material fact existed as to whether a physician-patient relationship was formed between defendants and the decedent and whether they owed a duty of care to the decedent and breached that duty. 
Bovara
, 298 Ill. App. 3d at 1032.

By contrast, in the present case defendant did not review test results or interpret them; unlike 
Bovara
, defendant here was not in any way involved with the medical decisions made for Artrail.  Accordingly, 
Bovara
 is inapposite.  

Next, plaintiff argues that the Roseland Community Hospital bylaws imposed a contractual duty upon defendant to treat Artrail.  The hospital bylaws set forth the purposes and responsibilities of each member of the hospital staff, including that they provide "quality care" to all patients admitted to the hospital. 

The hospital bylaws are appropriately considered in determining whether the standard of care was met.  
Reynolds
, 277 Ill. App. 3d at 86.  However, such considerations only arise 
after
 a physician-patient relationship imposing a duty has been found to exist.  
Reynolds
, 277 Ill. App. 3d at 86.  In the present case, no physician-patient relationship existed between defendant and Artrail; therefore, the hospital bylaws are not relevant here.  

Plaintiff cites an Arizona case, 
Hiser v. Randolph
, 126 Ariz. 608, 617 P.2d 774 (1980), which held that hospital bylaws obligated the emergency room doctor "on call" to provide treatment to anyone presenting themselves to the hospital for emergency care.  
Hiser
, 126 Ariz. At 611-12, 617 P.2d at 777-78.  
Hiser
 is factually inapposite to the present case, as defendant here was not "on call" at the time the nurse called him but, instead, was attending a meeting in Rockford. 

In conclusion, defendant owed no duty to Artrail as no physician-patient or other special relationship existed between them.  Therefore, we affirm the circuit court's order granting a directed verdict for defendant.

Affirmed.

BUCKLEY and GALLAGHER, J.J.'s concur.