RICHARD MOSS, Plaintiff-Appellant and Cross-Appellee, v. JENNIFER AMIRA, Defendant-Appellee and Cross-Appellant.

First District (4th Division)   Nos. 1—03—2766, 1—03—2805 cons.

Opinion filed March 24, 2005.

QUINN, J., specially concurring.

Law Offices of John Patrick Healy, of Chicago (John Patrick Healy and Sheryl E. Healy, of counsel), for appellant.

Meachum, Spahr, Cozzi, Postel & Zenz, of Chicago (Joseph P. Postel and Howard T. Trafman, of counsel), for appellee.

PRESIDING JUSTICE REID delivered the opinion of the court:

This case arises from a traffic accident that occurred between the plaintiff, Richard Moss, and the defendant, Jennifer Amira. Following trial, a jury verdict was returned in favor of Moss in the amount of $12,929.50 and a judgment was thereon entered against Amira.

On appeal, Moss argues that: (1) the trial court erred when it denied his motion *in limine* and subsequent posttrial motion to bar the testimony of expert witness Dr. Richard Moser, due to defense counsel's alleged violation of *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581 (1986), (2) the trial court erred when it denied his motion *in limine* and subsequent posttrial motion to bar portions of Dr. Moser's evidence deposition, and (3) the jury verdict was against the manifest weight of the evidence.

On cross-appeal, Amira argues that the trial court erred when it denied her posttrial motion for a setoff.

For the reasons that follow, we find that the trial court erred when it denied Moss' posttrial motion. We reverse the decision of the trial court and remand this matter for a new trial.

## BACKGROUND

A traffic accident occurred on December 18, 1997, when Amira rear-ended Moss' vehicle. After the accident, Moss was taken to Northwest Community Hospital where he was examined, fitted with a collar, given a prescription, and released later that evening.

On June 8, 1998, Moss visited Dr. Richard Moser, a neurological surgeon. On February 12, 2002, the discovery deposition of Dr. Moser was taken.

Thereafter, defense counsel provided, in a letter dated June 11, 2002, to plaintiff's counsel, answers to Illinois Supreme Court Rule 213(g) (134 Ill. 2d R. 213(g)) interrogatories and expressed an intention to call Dr. Moser as a defense opinion witness. With regard to Dr. Moser, the letter stated the following:

"With regard to Illinois Supreme Court Rule 213(g), Defendant discloses Dr. Richard Moser and Dr. J. B. Mansfield as opinion witnesses in this matter. With regards to Dr. Moser, he is expected to testify as to both the subject matter and specific opinions and/or conclusions set forth during his discovery deposition taken on February 12, 2002. The specific opinions to be rendered by Dr. Moser (as set forth during his discovery deposition) include, among other things, that the cervical spondylosis with significant degenerative disc disease was not caused by the automobile accident at issue, that the automobile accident may have exacerbated a preexisting condition based on the subjective evidence provided by Plaintiff's past medical records/history revealed no complaints of neck pain or radiculopathy prior to the accident (and that he has not seen any of those prior records and does not know anything about Plaintiff's past history), and that he cannot render an opinion one way or another as to whether or not Mr. Moss needs surgery, that if an SSEP study were to be performed and if it did show that surgery was necessary such surgery may have possibly been needed in the future with or without the occurrence of the car accident at issue. In addition, Dr. Moser opines that he does not disagree with the opinions of Dr. Mansfield, Dr. Cybulski, Dr. Lipov, Dr. Cerullo, and Dr. Gropper who have all indicated that surgery is not needed. Dr. Moser further opines that if the accident exacerbated a preexisting condition he would expect complaints of neck pain and radiculopathy within a few days of the accident. Dr. Moser's qualifications include the fact that he is a board certified neurological surgeon. Dr. Moser's Curriculum Vitae was given to both parties at

his discovery deposition. The basis of Dr. Moser's opinions are his examination and treatment of Richard Moss as well as his experience as a neurological surgeon. Dr. Moser's findings and opinions from his specific June 8, 1998 neurological consultation with Richard Moss are included in Dr. Moser's report dated June 8, 1998 which was marked as Dr. Moser's deposition Exhibit #2."

On January 31, 2003, Moss' attorney sent an additional disclosure to defense counsel which revealed that Dr. Cerullo would opine that Moss needed surgery. In particular, the letter stated:

"Essentially, Dr. Cerullo, on the basis of additional tests and treatment, has determined that Mr. Moss is suffering from cervical radiculopathy and has recommended surgery involving a cervical discectomy and fusion at C5-6."

In a letter addressed to plaintiff's counsel, dated April 3, 2003, defense counsel supplemented Amira's Rule 213 answers with the disclosure that Dr. Moser and Dr. Mansfield would testify that the auto accident, at issue in this matter, did not cause Moss to need surgery. The exact contents of the letter follow:

"Please be advised that Defendant's Rule 213(g) disclosures (now considered to be Rule 213(f)(3) disclosures) are the same as those previously set forth in this matter. The only additional opinion expected to be offered by both Dr. Moser and Dr. Mansfield would be that any future surgery needed or performed on Plaintiff is not casually [sic] related to the accident at issue in this lawsuit. This opinion is added based on Plaintiff's supplemental opinion that surgery will be needed in the future. Of course, both Dr. Moser and Dr. Mansfield opine that no such surgery is even needed.

I still await your providing to me dates on which you will present Mr. Moss' ex-wife and daughters for discovery depositions. I do not even have their full names, addresses, etc. If you still plan on calling these individuals as witnesses please provide me dates in the very near future. Thank you."

In a letter dated April 23, 2003, defense counsel sent Dr. Moser a notice of his evidence deposition and enclosed copies of his discovery deposition transcript and Amira's answers to Illinois Supreme Court Rule 213 interrogatories. The April 23 letter was also sent to Moss' counsel. The exact contents of the letter follow:

"My firm represents the Defendant in the above-captioned lawsuit. Please find enclosed a Notice of Evidence Deposition for May 12, 2003.

For your convenience, I am enclosing a copy of your discovery deposition transcript and Defendant's Answers to 213 Interrogatories wherein I disclose your expected opinions in this matter. The check for your evidence deposition will be forwarded under separate cover."

On May 12, 2003, Dr. Moser's evidence deposition was taken. Prior to trial, Moss filed a motion *in limine* to bar Dr. Moser's testimony contending that defense counsel's April 23, 2003, letter to Dr. Moser constituted a *Petrillo* violation. *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581 (1986). The trial court denied the motion, finding that defense counsel's actions did not rise to the level of a *Petrillo* violation. Additionally, the trial court refused to allow plaintiff's counsel to make an objection to certain testimony contained in Dr. Moser's evidence deposition where no objection was made at the time that the deposition was taken.

The trial on the matter commenced on May 21, 2003. The only issue at trial was the extent of Moss' damages. At the conclusion of trial, the jury returned a verdict in favor of Moss in the amount of $12,929.50.

Prior to trial, Amira's insurance company, Liberty Mutual, made payments for Moss' medical bills in the amount of $9,511.40. On June 16, 2003, Amira filed a motion to set off the judgment by the amount of those prior payments, which would result in a net judgment of $3,418.10.

On July 14, 2003, Moss filed a posttrial motion pursuant to section 2—1202 of the Illinois Code of Civil Procedure for the entry of an order setting aside the jury's verdict as to damages and ordering a new trial on damages only. 735 ILCS 5/2—1202 (West 2002). In the motion, Moss raised the issues of: (1) whether the trial court erred when it failed to bar Dr. Moser's testimony, (2) whether the trial court erred in limiting objections to Dr. Moser's evidence deposition, and (3) whether the jury's verdict as to damages was against the manifest weight of the evidence.

On August 7, 2003, the trial court denied both Moss' posttrial motion and Amira's motion for a setoff. On September 5, 2003, Moss filed his notice of appeal. Thereafter, on September 15, 2003, Amira filed her notice of cross-appeal.

## ANALYSIS

Moss argues that the trial court erred when it denied his motion *in limine* and subsequent posttrial motion to bar Dr. Moser's testimony due to defense counsel's *Petrillo* violation.

■ We apply the *de novo* standard of review to the trial court's denial of a motion for directed verdict as well as its denial of a motion for judgment *n.o.v. Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 89 (2002); *Gathings v. Muscadin*, 318 Ill. App. 3d 1091, 1093 (2001). "[V]erdicts ought to be directed and judgments *n.o.v.*

entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). "In making this assessment, a reviewing court must not substitute its judgment for the jury's, nor may a reviewing court reweigh the evidence or determine the credibility of the witnesses." *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 89 (2002). The standard to be used in determining whether to grant a new trial is whether the jury's verdict was against the manifest weight of the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 455 (1992). " 'A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence.' " *Maple*, 151 Ill. 2d at 454, quoting *Villa v. Crown Cork & Seal Co.*, 202 Ill. App. 3d 1082, 1089 (1990). This court will not reverse a trial court's ruling on a motion for a new trial except in those instances where it is affirmatively shown that the trial court clearly abused its discretion. *Maple*, 151 Ill. 2d at 455. "In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial." *Maple*, 151 Ill. 2d at 455.

■ "Under *Petrillo v. Syntax Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952, *cert. denied* (1987), 483 U.S. 1007, 97 L. Ed. 2d 738, 107 S. Ct. 3232, defense counsel may communicate with a plaintiff's treating physician only by means of formal discovery as outlined in Supreme Court Rule 201 (107 Ill. 2d R. 201). *Ex parte* communications and conferences between defense counsel and a plaintiff's treating physician are prohibited as violative of public policy because they jeopardize the sanctity of the confidential and fiduciary relationship between a physician and his patient. (*Ritter v. Rush-Presbyterian-St. Luke's Medical Center* (1988), 177 Ill. App. 3d 313, 316, 532 N.E.2d 327, 329.) Where an *ex parte* communication has taken place between defense counsel and a plaintiff's treating physician, sanctions may be imposed upon the defendant, including reversal of the judgment in favor of the defendant and the award of a new trial. *Yates v. El-Deiry* (1987), 160 Ill. App. 3d 198, 204, 513 N.E.2d 519, 523." *Nastasi v. United Mine Workers of America Union Hospital*, 209 Ill. App. 3d 830, 838-39 (1991).

Moss contends that the *ex parte* communication which occurred between defense counsel and Dr. Moser constituted a *Petrillo* violation. Moss complains that defense counsel improperly sent Dr. Moser detailed written narratives regarding his view of medical opinions to

be disclosed at trial, including purported opinions of other treating physicians and those which defense counsel expected Dr. Moser to give following his discovery deposition. Moss asserts that this contact with Dr. Moser was not of a *de minimis* nature.

Moss argues that it is undisputable that the April 23, 2003, letter constituted an *ex parte* communication between Dr. Moser and defense counsel. Moss further maintains that sending copies of these detailed narratives to Dr. Moser was far from being *de minimis* scheduling matters. Instead, Moss argues that this contact was a highly improper *ex parte* communication which was in violation of *Petrillo*.

Moss maintains that there was no possible motivation of defense counsel in sending his narrative Rule 213 answers to Dr. Moser other than to attempt to influence Dr. Moser's future testimony. Furthermore, Moss argues that in defense counsel's correspondence to Dr. Moser, he attributed an opinion to Dr. Moser, *i.e.*, that any surgery at the present time for Moss would more probably be unrelated to the accident, which Dr. Moser had not given at his discovery deposition. Moss argues that by the time that Dr. Moser gave his evidence deposition, his opinion changed to reflect that which was in defense counsel's correspondence. As such, Moss contends that defense counsel's contacts with Dr. Moser were prejudicial and a clear violation of *Petrillo*.

In *Petrillo*, a product liability action, defense counsel informed the trial court that he had previously met in private with a treating physician for 1 of the 26 plaintiffs in the case. Upon learning of the meeting, plaintiffs' counsel moved to bar any future *ex parte* communications between defense counsel and any other physician. The trial court granted the motion and entered an order to that effect. Defense counsel, however, informed the court that he did not intend to comply with the order. The trial court, therefore, held the attorney in direct contempt, and the attorney appealed.

In affirming the trial court's order, the appellate court initially noted that *ex parte* conferences were not necessary to obtain information for defending a lawsuit because the discovery methods outlined by Supreme Court Rule 201 were sufficient. The court determined that a review of case law from other jurisdictions revealed that there was not a single instance in which a court found that an *ex parte* conference was necessary to assist defense counsel in obtaining information that they were unable to acquire through "regular channels of discovery." *Petrillo*, 148 Ill. App. 3d at 587.

The *Petrillo* court emphasized that society places a high value on the professional duties under which a physician operates, including the dual duties of confidentiality and loyalty. *Petrillo*, 148 Ill. App. 3d

at 589-92. The court noted that certain conduct could be against public policy even in the absence of an express constitutional or statutory prohibition because public policy could be inferred from such sources as statutes or constitutions. Reasoning that there exists a strong public policy in preserving the sanctity of the patient-physician relationship and acknowledging the plaintiff's privacy interests, the court determined that *ex parte* conferences unduly threatened society's interest in maintaining the fiduciary and confidential nature of the relationship. *Petrillo*, 148 Ill. App. 3d at 595-96. Accordingly, the court held that *ex parte* conferences between a plaintiff's physician and defendant or his counsel should not be permitted. *Petrillo*, 148 Ill. App. 3d at 596.

In *Mahan v. Louisville & Nashville R.R. Co.*, 203 Ill. App. 3d 748 (1990), the plaintiff alleged the trial court erred when it allowed one of his treating physicians to give testimony regarding certain CT scans. The plaintiff argued that under *Petrillo*, the physician should not have been allowed to testify because he and one of the defendant's attorneys had an *ex parte* communication regarding the scans prior to the physician's deposition.

The *ex parte* communication between defendant's attorney and plaintiff's physician was limited to a brief discussion lasting no more than 30 seconds prior to the physician's deposition during which time the defendant's attorney merely asked the physician if he had seen the plaintiff's CT scans. The doctor indicated that he had not had time to review the scans prior to the deposition but that he had reviewed his notes and determined that the scans were not relevant to what he had treated the patient for. The attorney then apparently asked the physician whether he would then have time to review the scans, and the doctor indicated that it would take him about 5 or 10 minutes to do so and that because of the time factor he would go along with what the hospital radiologist had found regarding the results of those scans.

The *Mahan* court held that there was no *Petrillo* violation. In so ruling, the court made the following finding:

> "Plaintiff did not and could not establish that this communication resulted in any prejudice to him or that [the doctor's] conduct was in any way improper. Plaintiff nevertheless asserts that such prejudice and improper conduct should be implied as a matter of law based on the fact of the *ex parte* communication alone. We disagree. Plaintiff bases his argument on *Yates v. El-Deiry* (1987), 160 Ill. App. 3d 198, 513 N.E.2d 519, but in *Yates*, the defendant's attorney had had numerous meetings and communications with the patient's physician regarding the patient's medical condition while the plaintiff was still being treated by that physician. The

communication here was *de minimis,* and it did not result in the disclosure of any private or confidential information regarding the patient." *Mahan,* 203 Ill. App. 3d at 754.

In *Nastasi,* as in the present case, defense counsel had, *inter alia,* sent correspondence to a treating physician of the plaintiff which set forth the parties' respective positions in the lawsuit and included copies of depositions of other physicians in the case. The *Nastasi* court held that these communications were violations of *Petrillo. Nastasi,* 209 Ill. App. 3d at 839. In making this determination, the *Nastasi* court stated:

"We believe that these communications plainly violate the rule of *Petrillo* and its progeny. Although there was no evidence that plaintiff's treating physicians actually disclosed any of plaintiff's confidences or breached their fiduciary duty to him, such evidence was not required. What matters is the potential harm to the physician-patient relationship. (*Mondelli v. Checker Taxi Co.* (1990), 197 Ill. App. 3d 258, 265, 554 N.E.2d 226, 272 [*sic*].) That potential is obvious here." *Nastasi,* 209 Ill. App. 3d at 839.

The *Nastasi* court went on to state:

"Unlike the situation in *Mahan v. Louisville & Nashville R.R. Co.* (1990), 203 Ill. App. 3d 748, 561 N.E.2d 127, this case did not involve some *de minimis* conversation regarding incidental matters preliminary to a deposition. What defendant's counsel was clearly attempting to do here is to use the medical testimony they had obtained on behalf of their client to influence or alter the opinions held by plaintiff's treating physicians." *Nastasi,* 209 Ill. App. 3d at 840.

In this case, there is no dispute that in a letter dated April 23, 2003, defense counsel sent Dr. Moser defendant's answers to Rule 213 interrogatories, which was the June 11, 2002, letter, wherein he "disclose[d] [Dr. Moser's] expected opinions in this matter." Unlike *Mahan,* this was not a *de minimis* communication regarding incidental matters preliminary to a deposition, such as scheduling. Here, the communication that occurred between defense counsel and Dr. Moser could be interpreted as an attempt on the part of defense counsel to attempt to alert Dr. Moser as to what his future testimony should be. This is clearly improper.

In her brief, Amira surprisingly makes the following statement:

"There was nothing improper in merely providing Dr. Moser with a copy of his deposition, *counsel's summary of the opinions expressed therein,* and a supplemental disclosure expressing one of those opinions in slightly different terms (remembering, of course, that there is no evidence that the last of these things was even provided to Dr. Moser). *This is nothing more than preparing a wit-*

*ness for his evidence deposition.* It is not an improper attempt to influence his testimony. Defense counsel did not need to influence Dr. Moser's testimony because it was already given in a discovery deposition and, as the trial court pointed out, defense counsel merely recounted Dr. Moser's previous testimony." (Emphasis added.)

█ Under *Petrillo,* defense counsel may communicate with a plaintiff's treating physician only by means of formal discovery as outlined in Supreme Court Rule 201. *Petrillo,* 148 Ill. App. 3d at 591. Defense counsel does not have the right, as Amira suggests, to "prepare" plaintiff's treating physician for a deposition. This is clearly improper. As in *Nastasi,* defense counsel in this matter had improper *ex parte* communication with plaintiff's treating physician.

Here, the impact of defense counsel's *Petrillo* violation cannot be overstated. The medical testimony of four doctors was given at trial. It was Dr. Cerullo's testimony that Moss needed surgery and that it was causally related to the accident. It was Dr. Jacker's testimony that Moss' arthritic conditions were in fact aggravated by the auto accident. Dr. Mansfield testified that he saw no objective evidence that surgery was needed or related to the accident.

Dr. Moser testified that it was his opinion that Moss did not need surgery. This testimony clearly had an impact on the jury. As such, the *Petrillo* violation requires that the present judgment be vacated. On retrial, as a sanction, the trial court should bar Dr. Moser's testimony. See *Nastasi,* 209 Ill. App. 3d at 840.

Because of our decision, we need not address the other issues that were raised on appeal or on cross-appeal.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is reversed as to the appellant and found to be moot as to the cross-appellant.

Reversed and remanded for a new trial.

THEIS, J., concurs.

JUSTICE QUINN, specially concurring:

I completely concur with the majority's holding and the reasoning behind it. I write separately to note that the protections provided to medical patients in Illinois by *Petrillo v. Syntex Laboratories, Inc.,* 148 Ill. App. 3d 581 (1986), are now provided to medical patients throughout the United States by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 U.S.C. § 201 (2000)). Pursuant to this Act, the Department of Health and Human Services (HHS)

adopted a "Privacy Rule" which regulates when "Protected Health Information" (PHI) may be disclosed. 45 C.F.R. §§ 160, 164 (2004).

"Except as otherwise permitted or required, Protected Health Information (PHI) may not be disclosed without a valid authorization, and any use or disclosure must be consistent with the authorization granted. The Privacy Rule applies to both written and oral communications. The HIPAA regulation applicable to judicial proceedings is 45 C.F.R. § 164.512(e)(1). Subsections 164.512(e)(1)(i) and (e)(1)(ii) define the circumstances in which a healthcare provider may reveal PHI in the course of a judicial proceeding. Nowhere do the regulations permit healthcare providers to discuss PHI with defense attorneys because a lawsuit is pending. Nowhere do any of the HIPAA regulations permit or purport to permit *ex parte* communications. The regulations are simply silent about the issue.

HIPAA's regulations for judicial proceedings permit disclosure of PHI only under the following conditions:

'(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

(ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (c)(1)(v) of this section.'

These sections may be summarized as allowing disclosure only in response to: (1) a court order expressly authorizing the disclosure of the requested PHI, or (2) a subpoena or discovery request issued pursuant to the Rules of Civil Procedure, if a qualified protective order has been requested or a good-faith effort has been made to give notice to the individual and any objections have been resolved." D. Wirtes, R. Lamberth & J. Gomez, *An Important Consequence of HIPAA: No More Ex Parte Communications Between Defense Attorneys and Plaintiff's Treating Physicians*, 27:1 Am. J. Trial Advoc., at 5-6 (2003).

In *National Abortion Federation v. Ashcroft*, No. 04 C 55 (N.D. Ill. February 6, 2004), the federal district court considered the interplay of HIPAA and Illinois law. The court reviewed Illinois' Code of Civil Procedure (735 ILCS 5/8—802 (West 2002)), the Medical Patients Rights Act (410 ILCS 50/3(a), (d) (West 2002)), and the Hospital Licensing Act (210 ILCS 85/6.17(d) (West 2002)). The district court first held, "Illinois law concerning when nonparty patient medical records may be disclosed by hospitals or doctors is far more restrictive [than HIPAA.]" *National Abortion Federation*, slip op. at 7. Further:

> "Because we find that Illinois law is more stringent than HIPAA's disclosure requirements and that it would be impossible for Northwestern to comply with both Judge Casey's HIPAA-pursuant Order and various provisions of Illinois law, Illinois's nonparty patient privacy laws are not preempted by HIPAA and its subsequent regulations." *National Abortion Federation*, slip op. at 9-10.

The parameters of HIPAA will be discussed and resolved by the courts over the years to come, and I certainly do not attempt to do so in this concurrence. However, I do believe that Illinois' statutes and the holding in *Petrillo* have provided Illinois practitioners with a strong foundation upon which to build.