2026 IL App (1st) 240590-U

No. 1-24-0590

Order filed March 6, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| DEBRA FAY JONES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20-L-012603 |
| | ) | |
| ARDEN COURTS OF PALOS HEIGHTS, IL, LLC, a | ) | |
| limited liability company, individually and d/b/a ARDEN | ) | |
| COURTS OF PALOS HEIGHTS, and KEVIN C. | ) | |
| HENDRICKS, | ) | |
| | ) | |
| Defendants-Appellants, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| ATTORNEY SHANA A. O'GRADY, | ) | Honorable |
| | ) | Maureen Hannon |
| Contemptor-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Navarro and Justice Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm in part and reverse in part the circuit court's order imposing sanctions against defendants for their refusal to answer certain deposition questions and we

remand for further proceedings. We vacate the circuit court's order of contempt against defendants' counsel entered for purposes of this appeal.

¶ 2     This interlocutory appeal arises following the circuit court's entry of a finding of contempt against defendants, Arden Courts of Palos Heights, IL, LLC, a limited liability company, individually and d/b/a Arden Courts of Palos Heights (Arden Courts), and Kevin C. Hendricks[1], collectively, the "Arden Defendants," following Mr. Henricks' refusal to answer questions during his deposition regarding an incident that occurred at Arden Courts where plaintiff Debra Fay Jones was attacked by a resident of the facility. The Arden Defendants objected to the questions on the basis that the information sought was protected by the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) (740 ILCS 110/1 *et seq.* (West 2020)). After the court granted Ms. Jones' motion for sanctions, the Arden Defendants sought a finding of "friendly contempt" for the purposes of appealing the court's order.

¶ 3     On appeal, the Arden Defendants contend that the circuit court erred in finding Mr. Henricks, and another witness, former Arden Courts employee Kimberly Johnson, were required to answer questions regarding their observations of the incident between Ms. Jones and the resident where such information was protected by the Confidentiality Act and no exceptions applied permitting disclosure. The Arden Defendants assert that the Confidentiality Act protects all records and communications of a non-party recipient of medical or mental health services, including whether the person is a recipient of those services. They maintain that records and communications include observations of the resident where those observations indicate that the resident was at the facility and receiving treatment there. The Arden Defendants maintain that these protections apply

---

[1]We note that Ms. Jones identified defendant Mr. Henricks as "Kevin C. Hendricks" in her compliant; however, elsewhere in the record, and in his brief before this court, his surname is spelled "Henricks."

regardless of whether the witnesses are "therapists" as defined in the Confidentiality Act. For the reasons that follow, we affirm in part and reverse in part the judgment of the circuit court, we vacate the finding of contempt, and we remand for further proceedings consistent with this order.

¶ 4                                  I. BACKGROUND

¶ 5     Arden Courts is a long-term dementia care facility that provides housing and care to individuals diagnosed with dementia and other mental health conditions. On December 13, 2018, Ms. Jones was at Arden Courts when she was attacked by a resident. On March 3, 2021, Ms. Jones filed an amended complaint alleging common law negligence against Arden Courts and Mr. Henricks, individually. Ms. Jones alleged that she was hired by Arden Courts to bring therapy dogs to the facility and was lawfully present there when she was injured by M.H., a patient at Arden Courts. She alleged it was reasonably foreseeable to Arden Courts that M.H. would physically assault other individuals where he suffered from dementia, was mostly non-verbal, and had exhibited periods of agitation. Ms. Jones contended that M.H. had previously engaged in physical threats and attacks on other individuals and Arden Courts failed to properly supervise and manage him.

¶ 6     She contended that Arden Courts and Mr. Henricks were negligent and breached their duties to her in that they, *inter alia*, failed to monitor a resident with a high risk of aggressive behavior, failed to properly train their employees, failed to implement policies and procedures to properly monitor residents, and failed to warn Ms. Jones that M.H. posed a high risk of aggression and presented a high risk of injuring her. Ms. Jones asserted that, as a result of the injuries, she experienced pain and suffering and loss of normal life, and incurred necessary medical expenses.

¶ 7     The Arden Defendants filed a motion to dismiss the complaint pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)). The Arden

Defendants alleged that Ms. Jones improperly comingled causes of action, failed to adequately plead sufficient factual allegations, and failed to sufficiently allege that Arden Courts and Mr. Henricks owed her a common law duty. Following briefing, the circuit court denied the motion.

¶ 8     Ms. Jones sought to depose Mr. Henricks and other current and former staff of Arden Courts regarding the incident. On April 20, 2022, the Arden Defendants moved for a protective order to limit the scope of those depositions. The Arden Defendants sought an order ensuring that none of the witnesses would be questioned regarding any information relating to M.H. that was protected under the Confidentiality Act. This included any questions regarding any care or treatment of M.H., including any examination, diagnosis, evaluation, treatment, training, pharmaceuticals, aftercare, habilitation, or rehabilitation, or any communications with M.H. at any time.

¶ 9     The court granted Ms. Jones leave to depose Mr. Henricks and Kimberly Johnson, a former Arden Courts employee, concerning the policies, procedures, and protocols in place at Arden Courts at the time of the occurrence. The court also granted Ms. Jones leave to depose Mr. Henricks and Ms. Johnson regarding their observations of M.H. and the events resulting in Ms. Jones' injury. The court prohibited, however, Ms. Jones from deposing Mr. Henricks and Ms. Johnson concerning any diagnosis of M.H., or regarding any medical or mental health treatment provided to M.H.

¶ 10    The Arden Defendants moved to reconsider the court's order, contending that Mr. Henricks' and Ms. Johnson's observations of M.H. were protected by the Confidentiality Act. The Arden Defendants maintained that it was uncontested that M.H. was admitted to Arden Courts and was the recipient of mental health services such that he was afforded the protections of the Confidentiality Act. The Arden Defendants asserted that the Confidentiality Act broadly protects

services, including examinations, diagnosis, evaluation, treatment, training, pharmaceuticals, aftercare, habitation, or rehabilitation, and confidential communications. The Arden Defendants contended that "communications" included information that indicates that a person is a recipient of mental health services. The Arden Defendants argued that anything Mr. Henricks or Ms. Johnson heard from M.H. would be protected communications and anything they saw him do would form the basis of examinations and evaluations, which were included in "services" under the Confidentiality Act. The Arden Defendants contended that any testimony regarding M.H. by Mr. Henricks or Ms. Johnson would confirm that M.H. was a recipient of mental health services, which would not be permitted by the Confidentiality Act. The Arden Defendants maintained that there was no exception under the Confidentiality Act that would permit disclosure of these communications and observations.

¶ 11    The circuit court granted in part and denied in part the motion to reconsider. The court granted Ms. Jones leave to depose Mr. Henricks and Ms. Johnson concerning "the policies, procedures, and protocols in place at Arden Courts at the time of the occurrence, and for the time within one year before the date of the occurrence in question" and concerning "their observations of M.H. as it relates to the events resulting in injury to" Ms. Jones. The court, however, prohibited Ms. Jones from inquiring about observations of M.H. days before the incident, examinations or diagnosis of M.H., medical or mental health treatment provided to M.H., provision of medical or mental health records of M.H., and "[a]ny further identifying information about M.H." The court reserved ruling on the remainder of the motion for a protective order until after the two depositions had taken place. The court advised the Arden Defendants that if they believed a particular question ran afoul of the court's order, they should object and the court would review each question and make a ruling on the objection upon the motion of either party.

¶ 12    Mr. Henricks' deposition occurred on January 16, 2024. He testified that at the time of the incident in 2018, he was the senior executive director for the assisted living division at Arden Courts. His main responsibility was to manage the business of Arden Courts, which included financials, hiring and firing employees, and ensuring that residents were moving in. Mr. Henricks was not licensed or certified in providing counseling or therapy and did not make medical records. As part of his responsibilities, Mr. Henricks would interact with Arden Courts' residents and their families. Mr. Henricks testified regarding the operation of Arden Courts, including the number of employees and the services offered.

¶ 13    Mr. Henricks testified that, in his experience, some dementia patients would become aggressive and physically violent because of the disease. Pursuant to statute, Arden Courts would keep and maintain records of those incidents and would report such incidents to the Illinois Department of Public Health. Arden Courts had training and curriculum for staff to assist and deescalate such situations.

¶ 14    On the advice of counsel, Mr. Henricks refused to answer any questions relating to M.H., including whether he knew who M.H. was, whether M.H. was a resident at Arden Courts, and any other questions regarding his observations of M.H. at Arden Courts. Mr. Henricks' counsel objected on the basis that these questions called for information protected by the Confidentiality Act.

¶ 15    Following the deposition, Ms. Jones filed a motion for sanctions based on Mr. Henricks' failure to comply with the court's orders granting her leave to depose Mr. Henricks and Ms. Johnson regarding their observations of M.H. as it related to her injuries. Ms. Jones identified 31 questions that Mr. Henricks refused to answer during the deposition in violation of the court's

orders. Ms. Jones sought sanctions based on Mr. Henricks' refusal to answer the identified questions.

¶ 16    The court granted Ms. Jones' motion for sanctions in part, finding that Mr. Henricks' refusal to answer some of the questions identified in the motion violated the court's orders. The court specifically identified questions 1-15 and questions 17-18 set forth in paragraph 9 of the motion. Those questions included:

1. "Mr. Henricks refused to answer whether Debra Fay Jones had an altercation with MH on December 13, 2018. [].

2. Mr. Henricks refused to answer whether on December 13, 2018, at any time prior to 4:00 p.m., whether he observed MH anywhere within the facility of Arden Courts of Palos. [].

3. Mr. Henricks refused to answer whether on December 13, 2018, he spoke with MH. [].

4. Mr. Henricks refused to answer whether on December 13, 2018, he heard [M.H.] speak to him or any other person. [].

5. Mr. Henricks refused to answer whether on December 13, 2018, he observed MH in a state of agitation prior to 4:00 p.m. [].

6. Mr. Henricks refused to answer whether on December 13, 2018, the police were called. [].

7. Mr. Henricks refused to answer whether on December 13, 2018, he informed the Palos Heights Police Department that MH had been agitated earlier that day. [].

8. Mr. Henricks refused to answer whether on December 13, 2018, he advised the investigating officer from the Palos Heights Police Department of MH's legal name. [].

9. Mr. Henricks refused to answer whether he observed the altercation between MH and Debra Jones on December 13, 2018. [].

10. Mr. Henricks refused to answer whether he knew or was aware of the name of any individuals who observed an altercation between MH and Debra Fay Jones on December 13, 2018. [].

11. Mr. Henricks refused to answer whether at the time of the altercation between Debra Fay Jones and MH, he was even in the facility. [].

12. Mr. Henricks refused to answer whether on December 13, 2018, he knew from any source where Kimberly Johnson was at the time of the altercation between MH and Debra Fay Jones. [].

13. Mr. Henricks refused to answer separate and apart from anything he may have seen whether he was made aware by any person of any altercation between MH and Debra Fay Jones. [].

14. Mr. Henricks refused to answer whether he is aware of anyone who witnessed the event between Debra Jones and MH. [].

15. Mr. Henricks refused to identify whether MH was even a resident of Arden Courts of Palos Heights. [].

*** 

17. Mr. Henricks refused to answer whether MH had a roommate. [].

18. Mr. Henricks refused to answer whether he was able to physically identify or recognize MH. [].”

For the purposes of pursuing this appeal, the court held the Arden Defendants' counsel in friendly contempt and ordered a fine of $100. The Arden Defendants filed a timely notice of appeal on March 18, 2024. We find that we have jurisdiction to consider the merits of this appeal pursuant to Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016)

¶ 17                                II. ANALYSIS

¶ 18     On appeal, the Arden Defendants contend that Mr. Henricks' and Ms. Johnson's observations of M.H. are protected under the Confidentiality Act. As such, any testimony by them regarding their observations of M.H. during his admission to Arden Courts, including what occurred during the incident involving Ms. Jones, would be protected communications under the Confidentiality Act. The Arden Defendants maintain that the court can order disclosure of those observations only if M.H., as the recipient of the mental health services, introduced his mental health condition as an element of a claim or defense. The Arden Defendants assert that because M.H. is not a party to this action, his mental health has not been placed at issue, and therefore any information about his presence at Arden Courts is protected by the Confidentiality Act.

¶ 19                            A. Standard of Review

¶ 20     As noted, this is an interlocutory appeal pursuant to Supreme Court Rule 304(b)(5) that was initiated after the Arden Defendants refused to comply with the trial court's discovery orders, were sanctioned, and were held in contempt. Discovery orders are not final orders and, therefore, are not ordinarily appealable. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). However, a party may test the correctness of a discovery order through contempt proceedings by violating, or threatening

to violate, a pretrial discovery order. *Id.* "Review of the contempt finding necessarily requires review of the order upon which it is based." *Id.*

¶ 21 Although we typically review a trial court's discovery order for abuse of discretion, the proper standard of review depends on the question that was answered by the trial court. *Id.* at 70. Where the facts are uncontroverted and the issue is the trial court's application of the law to the facts, we may determine the correctness of the ruling independently of the trial court's judgment. *Id.* Here, we must determine whether Mr. Henricks and Ms. Johnson may testify regarding their observations of M.H. during the incident with Ms. Jones or whether such testimony is prohibited by the Confidentiality Act and, if so, whether any exception to the privilege applies. These are matters of law subject to *de novo* review. *Id.* at 71.

¶ 22                                    B. The Confidentiality Act

¶ 23 The Confidentiality Act provides that "any communication made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient," including "information which indicates that a person is a recipient" "shall be confidential and shall not be disclosed except as provided in this Act." 740 ILCS 110/2, 3 (West 2020). "Unless otherwise expressly provided for in this Act, records and communications made or created in the course of providing mental health or developmental disabilities services shall be protected from disclosure regardless of whether the records and communications are made or created in the course of a therapeutic relationship." *Id.* § 110/3. The Confidentiality Act also protects as confidential "any record kept by a therapist or by an agency in the course of providing mental health or developmental disabilities service to a recipient concerning the recipient and the services provided." *Id.* § 110/2. " 'Mental health or developmental disabilities services' or 'services' includes but is not limited to examination,

- 10 -

diagnosis, evaluation, treatment, training, pharmaceuticals, aftercare, habilitation or rehabilitation." *Id.*

¶ 24    Here, the Arden Defendants maintain that the testimony sought to be elicited by Ms. Jones regarding Mr. Henricks' and Ms. Johnson's observations of M.H. is protected as confidential under the Confidentiality Act as "communications" that would "indicate that [M.H.] is a recipient" of mental health services. Such testimony would also concern the "services" provided to M.H. because it would speak to his habilitation at Arden Courts.

¶ 25    In response, Ms. Jones asserts that the at-issue testimony is not a record or communication under the Confidentiality Act because Mr. Henricks and Ms. Johnson merely observed M.H. and were not involved in providing mental health services to him. Ms. Jones maintains that, in the alternative, the testimony can be "de-identified" in accordance with Health Insurance Portability and Accountability Act (HIPAA) (42 U.S.C. § 1320d et seq. (2020)), and that, in either case, M.H. will not suffer irreparable harm.

¶ 26    In support of their contention that the witnesses' observations of M.H. are protected under the Confidentiality Act, the Arden Defendants primarily rely on this court's decision in *Stuckey v. Renaissance at Midway*, 2015 IL App (1st) 143111. In *Stuckey*, a resident at a long-term care facility owned and operated by the defendants, The Renaissance at Midway (Renaissance), sought damages for injuries he incurred when he was physically assaulted by another resident, "John Doe." *Id.* ¶ 1. The resident's attorney filed written discovery requests upon Renaissance seeking personal information regarding John Doe, including whether John Doe had ever been involved in a prior incident involving physical aggression with another resident. *Id.* ¶ 6. Renaissance refused to respond to the discovery requests, asserting that the information was protected by HIPAA. *Id.*

¶ 27    In one interrogatory, the plaintiff requested information regarding John Doe, including " 'his name, address, social security number, whether a criminal background check had been completed on him and whether there were any prior incidents of aggression between this resident and any other residents or employees of the Defendant facility.' " *Id.* Another interrogatory requested to know " 'whether any complaints were ever made about the conduct of the other resident involved in the' " alleged incident. *Id.*

¶ 28    The plaintiff filed a motion to compel and for an *in camera* inspection of the requested information. *Id.* ¶ 7. Among other information, the plaintiff requested " 'the nursing home chart of John Doe be produced under a qualified protective order for *in-camera* inspection.' " *Id.* Renaissance maintained that such information was protected by HIPAA and the Confidentiality Act. *Id.* The trial court granted the plaintiff's motion to compel, in part, finding that a majority of John Doe's medical records could not be produced, but a small portion of them were discoverable after they had been partially redacted to remove any personal, identifiable information. *Id.* ¶ 13. Renaissance's counsel informed the court that the redacted records would not be produced and asked the court to enter a friendly contempt. *Id.*

¶ 29    On appeal, Renaissance asserted that the court's order requiring the disclosure of the partially redacted portions of John Doe's records would violate the Confidentiality Act. *Id.* ¶ 19. This court observed that the Confidentiality Act provided "very broad" definitions for "services," "records," and "communications." *Id.* ¶¶ 23-25. The court noted that the documents provided for *in camera* inspection, which included patient information forms, nurse's notes, and care plans, all concerned John Doe and the services provided to him at Renaissance. *Id.* ¶ 25. The court observed that all the documents were prepared by a nurse or social worker at Renaissance, which are individuals who qualify as a "therapist" under the Confidentiality Act. *Id.* The records also

included information regarding conversations and other statements to and from "therapists" regarding John Doe and the "services" he received at Renaissance. *Id.* The court found that these records were not subject to disclosure, and the plaintiff had failed to demonstrate that any exception to the Confidentiality Act applied to permit disclosure. *Id.* ¶ 30.

¶ 30　In reaching its conclusion that the records sought by the plaintiff were protected communications under the Confidentiality Act, the *Stuckey* court distinguished a prior decision of this court in *Giangiulio v. Ingalls Memorial Hospital*, 365 Ill. App. 3d 823 (2006). In *Giangiulio*, the plaintiff, a patient at Ingalls Memorial Hospital (Ingalls), alleged that she was attacked by another patient, Jane Doe, during her stay at the hospital. *Id.* at 826. The plaintiff alleged that Ingalls was negligent in preventing the attack. *Id.* During discovery, the plaintiff served Ingalls with interrogatories and demanded the production of certain documents and the knife that was used in the attack. *Id.* at 826-27. Ingalls objected to certain interrogatories and the production of the knife, contending that the production of such information, documents, and objects was prohibited by, *inter alia*, the Confidentiality Act. *Id.* at 827.

¶ 31　On appeal, this court recognized that the Confidentiality Act prohibited the release of information that would identify Jane Doe as a recipient of mental health services. *Id.* at 838 (citing 740 ILCS 110/3 (West 2002)). The court noted that there was a document in the record that alleged that Jane Doe was being treated for mental illness. *Id.* Namely, the first amended complaint alleged that Jane Doe " 'suffered from various mental and emotional illnesses.' " *Id.* Therefore, the court reasoned, because the complaint identified Jane Doe as a possible recipient of mental services, any interrogatories that sought Jane Doe's personal information violated the Confidentiality Act. For example, one interrogatory sought Jane Doe's name, address, and telephone number, and another asked the period of time that Jane Doe was a patient at Ingalls before the attack. *Id.*

¶ 32 The court found, however, that interrogatories that did not require Ingalls to identify Jane Doe did not violate the Confidentiality Act. *Id.* In some of the interrogatories, the plaintiff sought information regarding the doctors, nurses, staff and employees who had contact with Jane Doe. *Id.* "Because Giangiulio is suing the hospital, its employees and staff for their negligence in allowing her to be attacked while a patient, no information about Jane Doe's medical or mental condition is required when answering those interrogatories." *Id.* The court therefore found that Ingalls was required to answer those interrogatories, provided that it continued to refer to the patient as Jane Doe. *Id.* Those interrogatories included:

> "3. State the full name, address, and telephone number of all doctors, physicians, nurses, and any other staff who were treating the 'JANE DOE' alleged in Plaintiff's Complaint.

> ***

> 5. State the full name, address, and telephone number of the Defendant's employee or staff member who assigned the 'JANE DOE' to Room 417E.

> * * *

> 7. State the full name, address, and telephone number of all staff members who took and retrieved the knife from the 'JANE DOE' alleged in Plaintiff's Complaint." *Id.* at 827.

The court also ruled that Ingalls was required to produce the knife used in the attack because it was not mental health information. *Id.* at 838. As a final note, the court observed that "the Confidentiality Act will not apply if Jane Doe's name, address or telephone number are discovered through inadvertence or from some source other than her hospital records." *Id.* (citing *House v. SwedishAmerican Hospital*, 206 Ill. App. 3d 437, 442-45 (1990)).

¶ 33 In distinguishing *Giangiulio*, the *Stuckey* court noted that the *Giangiulio* court did not authorize the hospital to disclose actual records or communications under the Confidentiality Act, but permitted the hospital to provide written answers to interrogatories and provide a physical object. *Stuckey*, 2015 IL App (1st) 143111, ¶ 27. "Moreover, the information that the hospital was required to provide was limited to information regarding staff members at the hospital who had contact with the attacker, with this court specifically concluding that " 'no information about Jane Doe's medical or mental condition is required when answering those interrogatories.' " *Id.* (quoting *Giangiulio*, 365 Ill. App. 3d at 838). The court observed that, by contrast, the plaintiff in *Stuckey* was seeking the disclosure of actual records and communications that contained specific information regarding John Doe and his condition, behavior, and treatment. *Id.*

¶ 34 In this case, the circuit court's discovery order entered after granting in part and denying in part the Arden Defendants' motion to reconsider, permitted Ms. Jones leave to depose Mr. Henricks and Ms. Johnson regarding their observations of M.H. as it related to the events resulting in Ms. Jones' injury. The court, however, prohibited Ms. Jones from inquiring about any observations of M.H. days before the incident, any examinations or diagnosis of M.H., any medical or mental health treatment provided to M.H., any provision of medical or mental health records of M.H., and any "further identifying information about M.H." These limitations sufficiently protected the information sought to be protected by the Confidentiality Act as explained in *Stuckey* and *Giangiulio*.

¶ 35 Applying the analyses in those decisions to the case at bar, it is clear that testimony that would reveal M.H.'s medical or mental condition is protected by the Confidentiality Act. However, testimony that is limited to information regarding staff members of Arden Courts, including whether those staff members had "contact" with M.H., that does not in any way contain

information about M.H.'s identity or his medical or mental condition is not protected. In addition, testimony or answers to interrogatories, as opposed to "actual records and communications" that do not contain specific information regarding M.H. and his condition, behavior, and treatment, are not protected by the Confidentiality Act.

¶ 36    Here, questions 1, 2, 6, 8, 9, 10, 11, 12, 13, 14, and 18 as identified in Ms. Jones' motion for sanctions do not in any way require a response that would reveal information about M.H.'s medical or mental condition. Mr. Henricks and Ms. Johnson are therefore required to answer these questions. Conversely, questions 3, 4, 5, 7, 15, and 17 arguably request information that would be found in M.H.'s medical records if he is a patient receiving medical or mental health services and therefore violate the Confidentiality Act. *Giangiulio*, 365 Ill. App. 3d at 838. These questions therefore violate the circuit court's discovery order.

¶ 37    Despite the Arden Defendants' contentions that the answers to all of these questions would suggest that M.H. is a recipient of mental health services, which is protected by the Confidentiality Act, these questions seek comparable information to the interrogatories found acceptable in *Giangiulio*, which similarly indicated that Jane Doe was present in the facility, was being treated there, and was involved in an altercation that was witnessed by hospital staff members. Indeed, in their answer to Ms. Jones' complaint, the Arden Defendants admitted that "M.H. voluntarily established residency at [Arden Courts] prior to December 13, 2018." The key concern under the Confidentiality Act is whether the requested information would disclose information about the mental health patient's medical or mental health condition or treatment. In this case, Ms. Jones is suing Arden Courts, its employees, and staff for their negligence in allowing her to be attacked while present at the facility, and no information about M.H.'s medical or mental condition is required when answering the questions identified above. *Id.*

¶ 38                              C. The Contempt Order

¶ 39    Having found that the circuit court's discovery order should be upheld, we nonetheless vacate the finding of contempt and assessment of the $100 penalty because we find that the Arden Defendants' refusal to comply with the order was not contemptuous of the circuit court's authority, but rather was made in good faith based on sound legal arguments for purposes of effectuating an interlocutory appeal. *Anderson v. Rush-Copley Medical Center, Inc.*, 385 Ill. App. 3d 167, 186 (2008).

¶ 40                              III. CONCLUSION

¶ 41    Accordingly, we affirm in part and reverse in part the circuit court's order for sanctions, and we vacate the order finding the Arden Defendants' counsel in contempt and imposing upon counsel a $100 fine. We remand for further proceedings consistent with this order.

¶ 42    Affirmed in part and reversed in part. Order of contempt vacated.

¶ 43    Cause remanded.